Ashok Ramani (SBN 200020)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Tel:  (650) 752-2000
Fax:  (650) 752-2111
ashok.ramani@davispolk.com

Dana M. Seshens (NY SBN 4148128)
(*pro hac vice application forthcoming*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel:  (212) 450-4000
Fax:  (212) 701-5800
dana.seshens@davispolk.com

*Attorneys for Plaintiff Pfizer Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PFIZER INC.,<br><br>                                   Plaintiff,<br><br>- against -<br><br>CHUN XIAO LI and DOES 1-5,<br><br>                                   Defendants. | Civil Action No. **'21 CV1980 CAB JLB**<br><br>**COMPLAINT** |

Plaintiff PFIZER INC., ("Pfizer"), through its undersigned attorneys, Davis Polk & Wardwell LLP, as and for its Complaint against Defendant CHUN XIAO LI ("Li") and DOES 1-5, respectfully alleges, upon knowledge as to itself, and otherwise upon information and belief, as follows:

## SUMMARY OF THE ACTION

1.      Conventional wisdom says that the cover up is worse than the crime. Pfizer is not yet sure whether that is the case here, and thus comes to this Court for

expedited relief in support of arbitration.  What Pfizer can say for sure is that its soon-to-be former employee Chun Xiao (Sherry) Li uploaded over 12,000 files—including scores of confidential Pfizer documents—from her Pfizer-issued laptop to a personal Google Drive account and onto other personal devices.  Upon learning of Ms. Li's troubling conduct, Pfizer addressed it with her.  Although Ms. Li initially gave the appearance of cooperation, it turns out that Ms. Li instead has misled Pfizer about what she took, how she took it, when and why she did it, and where those files (and possibly others) can be found today.

2.     For over 150 years, Pfizer has been an industry leader in the development of vaccines and drugs for the treatment of life-threatening diseases.  As just one example, Pfizer has been at the forefront of the global effort to develop a vaccine for COVID-19.  Through hard work, ingenuity, perseverance, and billions of dollars in capital expense, Pfizer secured the first emergency-use authorization in the United States for its COVID-19 vaccine in December 2020.  Pfizer's work related to COVID-19 and other debilitating diseases such as urothelial carcinoma, Merkel cell carcinoma, and non-small-cell lung cancer, to name but a few, saves tens of thousands of lives each year.

3.     Success breeds imitation, and competitors have been trying to recruit Pfizer's employees relentlessly, especially during 2021.  The vast majority of Pfizer employees choose to remain at Pfizer, pleased to remain on a winning team that recognizes individuals' efforts with generous compensation packages and advancement opportunities within Pfizer.  Not so for Ms. Li, who decided to leave Pfizer for a competitor believed to be Xencor, Inc.

4.     Had Ms. Li left Pfizer honorably, she would not be named in this Complaint.  But she made a different choice: on her way out the door, she transferred onto personal accounts and devices over 12,000 files, scores of which contain Pfizer confidential and trade-secret information, and tried covering her tracks repeatedly.  She went so far as to provide Pfizer's security team a decoy

laptop, leading Pfizer to believe it was the one she used to download the 12,000 files from her Google Drive account.  Forensic analyses confirmed it was not, and Ms. Li (or somebody else, including potentially DOES 1-5) likely remains in possession of the actual computer that contains those 12,000 files.

5.      Pfizer believes in robust, fair competition.  It was specifically that sort of competition that led Pfizer and its competitors to develop different COVID-19 vaccines with record-breaking speed.  And it is specifically that sort of competition that compels Pfizer and its competitors to push the boundaries to develop other blockbuster medications.  It would be unjust to permit Ms. Li and anybody with whom she may be working in concert to trade on Pfizer's successes and experience, whether at Xencor or elsewhere, by leveraging the numerous confidential Pfizer documents she took without permission and refuses to return.

6.      Pfizer therefore brings this action against Ms. Li and DOES 1-5 for (a) misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426, *et seq.*; (b) breach of contract; (c) conversion; and (d) trespass to chattel.  Pfizer concurrently seeks a temporary restraining order and injunctive relief to preserve the status quo and prevent further irreparable harm while Pfizer promptly commences arbitration proceedings in accordance with the terms of Ms. Li's Mutual Arbitration and Class Waiver Agreement.

## **PARTIES**

7.      Pfizer is a Delaware corporation, with its principal place of business at 235 East 42nd Street, New York, New York 10017.  As part of its business, Pfizer is involved in researching, developing, making and selling pharmaceutical products, including vaccines, which it distributes in California, throughout the United States, and around the world.

COMPLAINT

8.      Ms. Li resides, on information and belief, in San Diego, California. Ms. Li was hired in 2006 and currently serves as Associate Director of Statistics in Pfizer's Global Product Development group at Pfizer's facility in La Jolla, California.  Ms. Li informed Pfizer that she intends to resign effective November 24, 2021.

9.      The true names and capacities, whether individual, corporate, associate or otherwise, of DOES 1 through 5 are unknown to Pfizer, who therefore sues them by fictitious names.  DOES 1 through 5, on information and belief, are individuals or corporations who acted or are acting in concert with Ms. Li in connection with the misappropriation of Pfizer's trade-secret and confidential information and/or knowingly and intentionally have acquired, disclosed, and/or used Pfizer's trade-secret and confidential information.  Pfizer will amend this Complaint to state the true names and capacities of DOES 1 through 5 once they have been ascertained.

## JURISDICTION AND VENUE

10.      This action arises under the DTSA, 18 U.S.C. § 1836, *et seq*., as well as under California and New York law.  This Court has federal-question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Pfizer has claims for misappropriation of trade secrets under the DTSA, 18 U.S.C. § 1836(c).  This Court has supplemental jurisdiction over the state-law claims alleged in this complaint pursuant to 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over Ms. Li because she is a resident of the State of California.  Ms. Li has also had continuous and systematic contacts with the State of California by and through her employment with Pfizer at its facility in La Jolla, California where, upon information and belief, a substantial part of the actions causing Pfizer's injuries and giving rise to Pfizer's claims occurred.  Ms. Li has also purposefully directed business activities at the State of California, which constitute at least minimum contacts with the State of California

such that the maintenance of this suit in this Court does not offend traditional notions of fair play and substantial justice.

12.     Venue is proper in this Court because Ms. Li is subject to the personal jurisdiction of this Court, and because a substantial part of the events giving rise to Pfizer's claims and causing Pfizer's injuries occurred at Pfizer's facility in La Jolla, California, *i.e.*, within this Judicial District.  Further, based on information and belief, Ms. Li resides within this Judicial District.

## FACTUAL ALLEGATIONS

13.     Due to the sheer number of documents Ms. Li misappropriated, Pfizer has yet to understand the full scope of trade-secret and confidential information in her possession.  While Ms. Li possesses thousands of documents potentially related to numerous Pfizer vaccines, drugs, and other innovations, this Complaint focuses on Pfizer's COVID-19 vaccine and its avelumab and elranatamab monoclonal antibodies.

*Background on the Covid-19 Vaccine*

14.     As the COVID-19 pandemic spread globally, Pfizer decided that it had a moral and scientific imperative to develop and bring to the public a vaccine as quickly as possible.  On March 17, 2020, Pfizer signed a letter of intent to partner with BioNTech to co-develop an mRNA-based coronavirus vaccine program, BNT162, aimed at preventing COVID-19 disease.  The collaboration leverages Pfizer's expertise in vaccine research and development, regulatory capabilities, and global manufacturing and distribution network.

15.     To date, Pfizer has invested over $2 billion of its own capital to develop its COVID-19 vaccine and has dedicated hundreds of Pfizer scientists, strategists, and other personnel to the COVID-19 vaccine effort.  By risking its own investment, rather than relying on government funds, Pfizer could be more nimble in the development of the vaccine.

COMPLAINT

16.     The speed at which Pfizer was able to develop and gain approval of its vaccine was not due only to pandemic-related efforts and spending.  Rather, Pfizer had recently reorganized its research and development arm into biotech-like subdomains, allowing for better start-to-finish ownership of new products, like the COVID-19 vaccine.  Moreover, Pfizer leveraged its prior breakthrough innovations in the antiviral space to create the COVID-19 vaccine in record time.

17.     Beginning in March 2020, Pfizer conducted numerous clinical trials and made various regulatory submissions in collaboration with BioNTech, in an effort to obtain emergency use authorization for the vaccine from the Food and Drug Administration ("FDA").  The FDA so authorized the Pfizer-BioNTech COVID-19 vaccine on or about December 11, 2020, making it the first COVID-19 vaccine available to the general public.  The FDA has since fully approved the vaccine for individuals 16 and older and has extended emergency use authorization for children as young as five years old.  Needless to say, Pfizer's vaccine has been a huge medical and commercial success.

*Background on Monoclonal Antibodies*

18.     The COVID-19 vaccine has rightfully garnered significant praise and recognition around the world, but it should not overshadow the important work Pfizer does in other fields.  For example, Pfizer is a world leader in the research and development of monoclonal antibodies that combat rare and debilitating diseases.

19.     In general, a body's immune system attacks foreign substances by generating a large number of antibodies, which are proteins that bind to certain targets in the body such as antigens that cause infections.  Once an antibody attaches to an antigen, it triggers the body's immune system to target and destroy cells containing that antigen.  A monoclonal antibody is an antibody made in a laboratory that is designed to bind to a specific antigen, such as an antigen on the surface of a particular cancer cell.  Once the monoclonal antibody binds to the

cancer cell, the body begins targeting and destroying cells like it.  Monoclonal antibodies may also be designed to target immune system cells to increase their activity against cancer cells.

20.    One of the greatest challenges with respect to developing monoclonal antibodies is identifying the right antigen to target.  It takes years of research and development, trial and error work, and hundreds of millions of dollars in investment capital to investigate a potential new monoclonal antibody.  Most investigational monoclonal antibodies turn out to be failures, and the few that make it past early phase studies require even more resources and capital to bring to market.  Simply stated, finding the right antigen to target and developing a compatible monoclonal antibody requires absolute precision; anything short of that would fail to improve patients' health and could even prove fatal.

21.    In 2014, Pfizer entered into an agreement with Merck KGaA to co-develop avelumab, a groundbreaking monoclonal antibody now sold under the tradename Bavencio.  Avelumab is FDA-approved to treat a specific type of cancer in the bladder or urinary tract called urothelial carcinoma (UC) when it has spread or cannot be removed by surgery.  It is also approved for patients with a rare and aggressive form of skin cancer called Merkel cell carcinoma.  Pfizer is currently researching whether avelumab could treat other forms of cancer, and whether avelumab could be effectively combined with other drugs.  Pfizer has invested over millions of dollars in the research and development of avelumab and as a direct result has saved countless lives.

22.    Following in the footsteps of avelumab, Pfizer scientists discovered and began developing elranatamab, a bispecific monoclonal antibody.  Bispecific monoclonal antibodies are antibodies that can simultaneously bind to two different types of antigens or two different target sites on the same antigen.  Pfizer scientists believe elranatamab could be effective in treating multiple myeloma, a rare blood cancer that affects plasma cells made in the bone marrow.  There is currently a

high unmet medical need for treating multiple myeloma, and Pfizer is in a race with its competitors to develop more advanced treatments.  Recently, the FDA granted elranatamab Fast Track Designation, which is a process designed to facilitate the development, and expedite the review, of new drugs and vaccines that are intended to treat or prevent serious conditions that have the potential to address an unmet medical need.  To date, Pfizer has invested millions of dollars in the research and development of elranatamab, as it hopes elranatamab will prove to be the company's next blockbuster drug.

*Ms. Li's Employment at Pfizer*

23.     On August 2, 2006, Pfizer hired Ms. Li as Associate Director of Statistics in Pfizer's Global Product Development ("GPD") group based in China. On or around August 22, 2016, Ms. Li transferred to Pfizer's facility in La Jolla, California and continued her role as Associate Director of Statistics.

24.     Pfizer's GPD group is responsible for evaluating drug efficacy and safety in human clinical trials to obtain regulatory approval for drugs.  Given her role and responsibilities as Associate Director of Statistics, Ms. Li had access to highly confidential, proprietary, and trade-secret information related to numerous vaccines and medications, including the COVID-19 vaccine, avelumab, and elranatamab.

25.     GPD employees are well aware of their obligations to safeguard Pfizer confidential information.  In addition to supervisors constantly issuing reminders about confidentiality at meetings and discussions, Pfizer conducts periodic trainings designed to ensure that employees are aware of the policies and expectations around data security.  For example, Ms. Li was required to take a course titled "Collaborate Securely: Safeguarding Sensitive Pfizer Information" that detailed the importance of safeguarding Pfizer confidential information.  Ms. Li took this training three times in the last five years, on April 17, 2020, May 8, 2018, and January 20, 2017.  Ms. Li also took required trainings on the "Blue

Book," the Pfizer employee manual, on February 16, 2021, February 13, 2019, April 18, 2017, and November 23, 2016. This training included reminders about Pfizer's corporate policies regarding safeguarding sensitive information.

26. In addition, as part of her employment with Pfizer, Ms. Li entered into a Confidentiality Agreement, which imposed a number of restrictions on Ms. Li's activities during and after her employment. For example, by virtue of executing the Confidentiality Agreement, Ms. Li agreed not to "disclose or use any Confidential Information" without Pfizer's written permission, other than in the course of her employment with Pfizer. Ms. Li also agreed to "return within 48 hours" of her termination "all Company property and material within [her] possession, whether confidential or proprietary or that in any way relates to the business of the Company or any of its subsidiaries or affiliates."

*Pfizer's Protection of Its Confidential, Proprietary, and Trade-Secret Information*

27. Pfizer's confidential, proprietary, and trade-secret information is used in connection with Pfizer's business, products, and services, including its development, manufacture, and sale of drugs and vaccines.

28. Pfizer's confidential, proprietary, and trade-secret information gives Pfizer a substantial competitive advantage over its existing and would-be competitors, including Xencor, due to the significant investment of time, money, and resources in developing drug and vaccine programs, the drugs and vaccines themselves, as well as the overall business strategy and business plans for such programs, drugs, and vaccines. These advantages provide significant value to Pfizer over its competitors, such as Xencor.

29. Pfizer employs a set of robust measures to protect its intellectual property. Those measures include employing a dedicated team of in-house forensics specialists, tracking employee activity on company devices, and using automated monitoring alerts to escalate suspicious employee activity.

30.     Additionally, Pfizer employs a variety of employee-facing data-security measures including policies, agreements, and blocks on certain activity. For example, Pfizer's Systems Policy #403 prohibits "unauthorized . . . disclosure, transfer, use or unapproved release of Pfizer Information," the use of "unauthorized devices (e.g. personal/home computers and laptops, public computers, etc.) . . . to transmit, store or work on Pfizer Information," and the "[u]nauthorized use of non-Pfizer cloud service accounts for the storage, computation or transfer of Pfizer information."  In furtherance of this prohibition on non-Pfizer cloud service accounts, in October 2021, Pfizer implemented a technology that monitors when employees upload files to cloud-based platforms such as Google Drive.  Additionally, in 2019, Pfizer disabled USB access on all company laptops to prevent unauthorized transfer of Pfizer files onto external hard drives.

31.     Pfizer requires employees to sign, as a condition of employment, agreements obligating employees to protect Pfizer's confidential documents, information, trade secrets, and intellectual property.

32.     Pfizer's confidential, proprietary, and trade-secret information derives independent economic value from not being generally known to the public or other person who can obtain economic value from their disclosure, and from not being readily ascertainable by proper means.

*Pfizer's Investigation of Ms. Li's Suspicious Digital Activity*

33.     As part of Pfizer's tracking of employee activity on company devices, Pfizer's security team discovered on October 29, 2021, that, between Saturday, October 23, 2021 and Tuesday, October 26, 2021, Ms. Li transferred over 12,000 files from her Pfizer laptop to an online Google Drive account.  Ms. Li was "out of the office" on October 25–26, but, unbeknownst to Pfizer, she was conducting mass transfers of files from her Pfizer laptop to her Google Drive account during that time.  Pfizer immediately initiated a digital review of Ms. Li's emails, her file

COMPLAINT

access, and her internet activity on her Pfizer-issued laptop.  An investigation into Ms. Li's Pfizer email account revealed that she had been interviewing with and had received an offer of employment from Xencor.

34.     Pfizer human-resources, security, and digital-forensics personnel spoke with Ms. Li twice on Friday, October 29, 2021.  During the first conversation, which occurred over the telephone with Pfizer human-resources and security personnel, Ms. Li admitted to having transferred the files and claimed that she did so because she wanted to organize her files offline and have them for her own personal use.  Ms. Li represented that she had transferred the files from the Google Drive onto an external hard drive using her personal laptop and had not copied the files elsewhere.  A couple of hours later, Pfizer's digital-forensics personnel had a second conversation with Ms. Li via videoconference.  Between the two conversations, Ms. Li logged onto her Google Drive account and deleted all of the files saved there.  During the second conversation, after Ms. Li disclosed that she had deleted all the files from her Google Drive account, Pfizer personnel asked Ms. Li to come to Pfizer's La Jolla office on Monday, November 1, and turn over her external hard drive and personal laptop for inspection.  Ms. Li expressed reluctance to provide her personal laptop, explaining that it contained personal information, but ultimately agreed to do so.  Later that night, Pfizer personnel subsequently deactivated Ms. Li's Pfizer system access, her laptop, and her badge.

35.     On November 1, 2021, Ms. Li came in to Pfizer's offices in La Jolla to return her Pfizer-issued laptop.  Ms. Li also provided a personal laptop that she led Pfizer to believe was the one she used to download the Pfizer documents from her Google Drive account onto her external hard drive, as well as the external hard drive itself.  Pending completion of Pfizer's forensic analyses of the devices, Pfizer placed Ms. Li on paid administrative leave.

36.     The forensic examination of Ms. Li's devices revealed that Ms. Li had not been truthful with Pfizer.  Specifically, the forensic examination showed that

Ms. Li downloaded the 12,000 files to a folder having a file path "C:\Users\cli\Downloads." This is the Downloads folder associated with a user having a user profile "cli," which coincides with Ms. Li's first initial and last name. No such user profile or folder exists on Ms. Li's Pfizer-issued laptop, the personal laptop she provided Pfizer, or the external hard drive. In the opinion of the experienced forensics analyst who conducted the analysis, the most likely explanation for this discrepancy is that Ms. Li provided Pfizer with a personal laptop *other than* the one she used to download the 12,000 files. The forensics analysis also revealed that the laptop Ms. Li had provided to Pfizer was hardly used during the week of October 25 when the downloads occurred, corroborating that she most likely used a different laptop to initiate the downloads. This conduct casts doubt on Ms. Li's truthfulness but, far more troublingly for Pfizer, indicates that another, unknown laptop likely contains the 12,000 files she downloaded, which include scores of Pfizer confidential documents such as the examples discussed below.

37. The forensic examination also showed that a significant number of Pfizer documents were deleted from Ms. Li's external hard drive prior to turning it in. Specifically, forensic examination of Ms. Li's external hard drive showed that hundreds of files and folders having Pfizer related names were deleted the night of Saturday, October 30, 2021. She turned the hard drive over to Pfizer on Monday, November 1, 2021 without mentioning anything about these deleted files.

*Ms. Li Misappropriates Pfizer's Trade Secrets*

38. Ms. Li has misappropriated Pfizer information concerning a broad range of topics, including confidential, proprietary, and trade-secret information regarding Pfizer's COVID-19 vaccine and monoclonal antibody programs. Pfizer's investigation of the more than 12,000 files is ongoing, but below are some examples of documents Ms. Li misappropriated that contain such highly sensitive information:

COMPLAINT

- A September 24, 2021 presentation titled "E2E Clinical Development + Submissions Playbook" that reflects, among other things, Pfizer's analysis of the successes and breakthroughs of Pfizer's COVID-19 vaccine studies, end-to-end recommendations based on the COVID-19 vaccine studies, analysis concerning why the Pfizer and BioNTech relationship was successful compared to other partnerships, and the identification of critical data variables for drug studies and ways to manage them

- A February 21, 2021 presentation titled "Pfizer Oncology Virtual Hematology Franchise Year Beginning Meeting" that contains, among other things, operational goals, key achievements and key goals for various drugs, development plans and timelines, key next steps for elranatamab, clinical development overview for elranatamab, and key strategies for various drugs including elranatamab

- A July 6, 2021 "Clinical Development Plan Document" that details development plans for combining encorafenib and binimetinib to treat melanoma. The document discusses Pfizer's clinical development strategy, rationales, target product profiles, key elements of statistical analysis, global strategy, pediatric strategy, timelines, as well as a plethora of other highly sensitive trade secrets and confidential information

- A February 20, 2019 presentation titled "Avelumab Case Study – Implementation of BLRM in Oncology Dose Finding Trials with Multiple Drug Combinations" that discusses, among other things, Pfizer's approach to implementing the Bayesian Logistic Regression Model in studies with multiple drug combination, challenges in designing Phase 1 drug combination studies, dosing strategies for drug combinations, implementation issues, and specifics related to the design and decision processes related to Pfizer's Phase 1 avelumab studies

39.     Pfizer did not authorize Ms. Li to transfer the aforementioned Pfizer files to her personal Google Drive account, and Pfizer is not aware of any legitimate business purpose for these transfers, which breach her obligations under her Confidentiality Agreement.

*Ms. Li Tries to Resign and Declines an Exit Interview, Giving Rise to This Lawsuit*

40.     While Pfizer was conducting its investigation and forensic analyses, Ms. Li notified Pfizer on November 12, 2021, that she was leaving Pfizer and that her last day at the company would be November 24, 2021.  She refused to disclose the reason for her departure, including if she had a new employer.  As discussed above, Pfizer's investigation of Ms. Li's Pfizer email account showed that Ms. Li had received an offer to start at Xencor on November 29, 2021.

41.     Pfizer decided to give Ms. Li a final opportunity to come clean.  It asked Ms. Li to come in for a meeting on Monday, November 22, 2021, to answer some follow up questions to better understand the pathways that she used to transfer the 12,000 files at issue.  Pfizer expressed that it would appreciate Ms. Li's cooperation in making sure Pfizer's confidential information does not fall into the hands of any of its competitors, including her potential new employer Xencor.  Ms. Li declined to meet with Pfizer, stating that she had already provided Pfizer all the information it requested and also citing health issues.

42.     Given that Ms. Li is leaving Pfizer to start work for a competitor, possibly in less than a week, that Ms. Li has lacked candor and affirmatively misled Pfizer personnel, and that she appears to remain in possession of Pfizer trade-secret and confidential information, Pfizer has no choice but to commence this action and seek a temporary restraining order against her.  Indeed, Ms. Li acknowledged in her signed Confidentiality Agreement that "any breach by me of my obligations under this agreement . . . would cause irreparable harm to the Company, and that in the event of such breach the Company shall have . . . the right to an injunction, specific performance and other equitable relief to prevent violations of my obligations hereunder."

43.     The Confidentiality Agreement further provides that "[d]isputes arising under this Agreement will be subject to the Mutual Arbitration and Class Waiver Agreement."  However, the Mutual Arbitration and Class Waiver

14

Agreement provides that "[e]ither party to this Agreement may make application to a court for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration."

44.    Pfizer intends to promptly commence arbitration proceedings in accordance with the Confidentiality Agreement.

## FIRST CAUSE OF ACTION
### Trade Secret Misappropriation under the DTSA

45.    Pfizer repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

46.    This is a claim for violation of the DTSA, 18 U.S.C § 1836, *et seq.*, for the misappropriation of Pfizer's confidential, proprietary, and trade-secret information.

47.    Pfizer owns the confidential, proprietary, and trade-secret information misappropriated by Ms. Li, and those trade secrets are related to products used in, or intended for use in, interstate and/or foreign commerce.  Furthermore, the confidential, proprietary, and trade-secret information misappropriated by Ms. Li discloses Pfizer's analyses of its vaccine and drug programs, end-to-end recommendations based on its COVID-19 studies, operational goals, clinical development strategies and timelines, key achievements, and numerous other highly sensitive Pfizer information.

48.    Ms. Li, by and through the Confidentiality Agreement signed pursuant thereto, is subject to continuing confidentiality restrictions and has a duty to maintain confidentiality and not to use for any of her own purposes, or other's purposes, the confidential, proprietary, and trade-secret information to which she had access pursuant to her employment with Pfizer.

49.    Ms. Li knowingly and intentionally acquired, disclosed and/or used Pfizer's confidential, proprietary, and trade-secret information, including information about Pfizer's COVID-19 vaccine and avelumab and elranatamab

15

monoclonal antibody medications, among other products and/or services intended for use in interstate and/or foreign commerce, without the consent of Pfizer and by improper means, including conduct in breach of the Confidentiality Agreement. The types of documents that Ms. Li took are documents that Pfizer carefully protected and that any reasonable business in the industry would carefully protect from disclosure to a competitor. The information that Ms. Li misappropriated derives independent economic value from not being generally known to, and not readily ascertainable through proper means by, a competitor.

50.    A digital forensics review of Ms. Li's digital activities, completed in November 2021, confirmed that Ms. Li had transferred over 12,000 files, scores of which are Pfizer confidential documents, from her Pfizer laptop to her personal Google Drive account between the dates of October 23, 2021 and October 26, 2021. Ms. Li then downloaded those files onto a personal laptop and then copied the files onto an external hard drive.

51.    Ms. Li was or should have been aware at the time she accessed and/or copied Pfizer's documents that those documents contained Pfizer's trade secrets. Ms. Li took Pfizer's confidential, proprietary, and trade-secret information and transferred Pfizer's documents onto her personal Google Drive account, personal laptop, and external hard drive for no business purpose, and in violation of the Confidentiality Agreement.

52.    Having taken Pfizer's documents, Ms. Li was untruthful to Pfizer about her actions and interfered with its investigation. Ms. Li refused to disclose the identity of her employer, provided Pfizer with a decoy laptop, and apparently deleted hundreds of files from her external hard drive before turning it over for inspection. Ms. Li's conduct, combined with her apparent imminent plan to begin working at Xencor, makes it highly likely that Ms. Li will disclose and/or use Pfizer's confidential, proprietary, and trade-secret information.

53.     The wrongful acquisition, disclosure, and/or use of Pfizer's confidential, proprietary, and trade-secret information gives Ms. Li an unfair benefit and wrongful advantage in the marketplace over Pfizer, the rightful owner of Pfizer's confidential, proprietary, and trade-secret information.

54.     As a result of the aforementioned allegations, Ms. Li has wrongfully misappropriated Pfizer's confidential, proprietary, and trade-secret information and threatens to use and/or disclose it to her benefit and to the detriment of Pfizer.

55.     The aforementioned actions by Ms. Li in wrongfully converting and misappropriating Pfizer's confidential, proprietary, and trade-secret information was intentional, knowing, willful, malicious, fraudulent and oppressive.  The actions of Ms. Li, as set forth herein, constitute actual and threatened misappropriation under the DTSA, 18 U.S.C. § 1836, *et seq*.

56.     As a direct and proximate result of Ms. Li's actions, Pfizer has been greatly damaged, has suffered irreparable harm, and will continue to suffer irreparable harm.

57.     If not directed by this Court to provide access to all relevant accounts and devices and to refrain from using or disclosing Pfizer's confidential information and trade secrets as well as destroying relevant evidence, Ms. Li will continue to benefit from the misappropriation of Pfizer's confidential, proprietary, and trade-secret information, causing Pfizer continued irreparable harm, damage and injury

## SECOND CAUSE OF ACTION
## Misappropriation of Trade Secrets under the CUTSA

58.     Pfizer repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

59.     This is a claim for violation of the CUTSA, Cal. Civ. Code § 3426, *et seq*, for the misappropriation of Pfizer's confidential, proprietary, and trade-secret information.

60.     Pfizer owns the confidential, proprietary, and trade-secret information misappropriated by Ms. Li.  Furthermore, the confidential information and trade secrets misappropriated by Ms. Li discloses Pfizer's analyses of its vaccine and drug programs, end-to-end recommendations based on its COVID-19 studies, operational goals, clinical development strategies and timelines, key achievements, and numerous other highly sensitive Pfizer information.

61.     Ms. Li, by and through the Confidentiality Agreement signed pursuant thereto, is subject to continuing confidentiality restrictions and has a duty to maintain confidentiality and not to use for any of her own purposes, or other's purposes, the confidential, proprietary, and trade-secret information to which she had access pursuant to her employment with Pfizer.

62.     Ms. Li, knowingly and intentionally, acquired, disclosed and/or used Pfizer's confidential, proprietary, and trade-secret information, including information about Pfizer's COVID-19 vaccine and avelumab and elranatamab monoclonal antibody medications, among other products and/or services, without the consent of Pfizer and by improper means, including conduct in breach of the Confidentiality Agreement.  The types of documents that Ms. Li took are documents that Pfizer carefully protected and that any reasonable business in the industry would carefully protect from disclosure to a competitor.  The information that Ms. Li misappropriated derives independent economic value from not being generally known to the public or a competitor.

63.     A digital forensics review of Ms. Li's digital activities, completed in November 2021, confirmed that Ms. Li had transferred over 12,000 files, the vast majority of which are Pfizer confidential documents, from her Pfizer laptop to her personal Google Drive account between the dates of October 23, 2021 and October 26, 2021.  Ms. Li then downloaded those files onto a personal laptop and then copied the files onto an external hard drive.

64.     Ms. Li was or should have been aware at the time she accessed and/or copied Pfizer's documents that those documents contained Pfizer's trade secrets. Ms. Li took Pfizer's confidential, proprietary, and trade-secret information and transferred Pfizer's documents onto her personal Google Drive account for no business purpose, and in violation of the Confidentiality Agreement.

65.     Having taken Pfizer's documents, Ms. Li was untruthful to Pfizer about her actions and interfered with its investigation.  Ms. Li refused to disclose the identity of her employer, provided Pfizer with a decoy laptop, and deleted hundreds of files from her external hard drive before turning it over for inspection. Ms. Li's conduct, combined with her apparent imminent plan to begin working at Xencor, makes it highly likely that Ms. Li will disclose and/or use Pfizer's confidential, proprietary, and trade-secret information.

66.     The wrongful acquisition, disclosure, and/or use of Pfizer's confidential, proprietary, and trade-secret information gives Ms. Li an unfair benefit and wrongful advantage in the marketplace over Pfizer, the rightful owner of Pfizer's confidential, proprietary, and trade-secret information.

67.     As a result of the aforementioned allegations, Ms. Li has wrongfully misappropriated Pfizer's confidential, proprietary, and trade-secret information and threatens to use and/or disclose it to her benefit and to the detriment of Pfizer.

68.     The aforementioned actions by Ms. Li in wrongfully converting and misappropriating Pfizer's confidential, proprietary, and trade-secret information was intentional, knowing, willful, malicious, fraudulent and oppressive.  The actions of Ms. Li, as set forth herein, constitute actual and threatened misappropriation under the CUTSA, Cal. Civ. Code § 3426, *et seq*.

69.     As a direct and proximate result of Ms. Li's actions, Pfizer has been greatly damaged, has suffered irreparable harm, and will continue to suffer irreparable harm.

COMPLAINT

70.     If not directed by this Court to provide access to all relevant accounts and devices and to refrain from using or disclosing Pfizer's confidential information and trade secrets as well as destroying relevant evidence, Ms. Li will continue to benefit from the misappropriation of Pfizer's confidential, proprietary, and trade-secret information, causing Pfizer continued irreparable harm, damage and injury.

**THIRD CAUSE OF ACTION**
**Breach of Contract under New York Law**

71.     Pfizer repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

72.     Ms. Li knowingly and for valuable consideration, entered into the Confidentiality Agreement with Pfizer.

73.     The Confidentiality Agreement expressly: (a) precludes Ms. Li from "disclos[ing] or us[ing]" any "secret or confidential information and/or trade secrets" without Pfizer's written permission, other than in the course of her employment with Pfizer; (b) requires that Ms. Li, "prior to accepting any new employment," inform the new employer "of the existence of this Agreement and provide a copy to such new employer to ensure that the new employer is aware of [her] post-employment obligations"; and (c) requires Ms. Li to "return within 48 hours" of her termination "all Company property and material within [her] possession, whether confidential or proprietary or that in any way relates to the business of the Company or any of its subsidiaries or affiliates."

74.     The terms of the Confidentiality Agreement are reasonable in scope and duration, and are necessary to protect Pfizer's interest in its confidential, proprietary, and trade-secret information, as well as other legitimate business interests.

75.     The Confidentiality Agreement is a lawful contract governed by New York law, voluntarily and knowingly entered into by Ms. Li.

76.     During the course of her employment, Ms. Li was able to obtain confidential, proprietary, and trade-secret information about Pfizer, which was covered by the terms of the Confidentiality Agreement.

77.     Pfizer has performed all of its contractual obligations owed to Ms. Li under the terms of the Confidentiality Agreement.

78.     Ms. Li has unjustifiably and inexcusably breached, and continues to breach, the Confidentiality Agreement by, *inter alia*: (a) using without Pfizer's written permission confidential, proprietary, and trade-secret information for unauthorized purposes; (b) transferring without Pfizer's written permission confidential, proprietary, and trade-secret information, from Pfizer's systems to Ms. Li's personal Google Drive account, laptop, and external hard drive for unauthorized purposes; (c) failing to return Pfizer's confidential, proprietary, and trade-secret information; and (d) using Pfizer's confidential, proprietary, and trade-secret information without Pfizer's permission.

79.     Ms. Li acknowledged in her signed Confidentiality Agreement that "any breach by me of my obligations under this agreement . . . would cause irreparable harm to the Company, and that in the event of such breach the Company shall have . . . the right to an injunction, specific performance and other equitable relief to prevent violations of my obligations hereunder."

80.     As a result of Ms. Li's breaches of the Confidentiality Agreement, Pfizer has been irreparably injured and continues to face irreparable injury.  Pfizer is threatened with losing the value of its confidential, proprietary, and trade-secret information, customer and business relationships, and goodwill.

**FOURTH CAUSE OF ACTION**
**Conversion under California Common Law**

81.     Pfizer repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

82.     Ms. Li has received salary, benefits, and expenses to which she was not entitled by virtue of her unlawful conduct described herein.

83.     At all relevant times, Pfizer was and still is the rightful owner of the at-issue confidential, proprietary, and trade-secret information related to Pfizer's analyses of its vaccine and drug programs, end-to-end recommendations based on its COVID-19 studies, operational goals, clinical development strategies and timelines, key achievements, and numerous other highly sensitive Pfizer information.

84.     Ms. Li intentionally and improperly, in violation of the Confidentiality Agreement, took Pfizer's documents containing confidential, proprietary, and trade-secret information that exclusively belong to Pfizer.

85.     Ms. Li was not authorized by Pfizer to retain, take or not return Pfizer's confidential, proprietary, and trade-secret information, and she is required to return all such information upon termination of her employment with Pfizer. Ms. Li took Pfizer's documents with the intent to use and/or disclose such confidential, proprietary, and trade-secret information in a manner adverse to Pfizer's rights and interests.  Ms. Li improperly transferred Pfizer's confidential, proprietary, and trade-secret information from Pfizer's electronic systems to Ms. Li's personal Google Drive account, laptop, and external hard drive thereby depriving Pfizer of control over its property to this day.

86.     By this conduct, and upon information and belief, Ms. Li has unreasonably withheld and continues to unreasonably withhold Pfizer's property, including confidential, proprietary, and trade-secret information, from Pfizer, in defiance of Pfizer's rights and interests therein.  As a result, Ms. Li has and continues to misuse and seriously damage Pfizer's property, including confidential, proprietary, and trade-secret information.  Ms. Li's misconduct in this regard remains ongoing, and continues to harm Pfizer.

87.    As a direct and proximate result of Ms. Li's conversion of Pfizer's confidential, proprietary, and trade-secret information, Pfizer has been damaged and has suffered irreparable harm, and continues to suffer significant irreparable harm by, *inter alia*, damaging the secrecy and exclusivity of Pfizer's confidential, proprietary, and trade-secret information.

## FIFTH CAUSE OF ACTION
## Trespass to Chattels under California Common Law

88.    Pfizer repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

89.    At all relevant times, Pfizer was and still is the rightful owner of the at-issue confidential, proprietary, and trade-secret information related to Pfizer's analyses of its vaccine and drug programs, end-to-end recommendations based on its COVID-19 studies, operational goals, clinical development strategies and timelines, key achievements, and numerous other highly sensitive Pfizer information.

90.    Ms. Li intentionally and improperly, in violation of the Confidentiality Agreement, took Pfizer's documents containing confidential, proprietary, and trade-secret information that exclusively belong to Pfizer.

91.    Through these acts, which Ms. Li has performed without written permission, authorization, justification, or consent, Ms. Li has interfered with Pfizer's possession of confidential, proprietary, and trade-secret information that exclusively belongs to Pfizer.

92.    As a direct and proximate result of Ms. Li's wrongful actions, Pfizer has been damaged and has suffered irreparable harm, and continues to suffer significant irreparable harm by, *inter alia*, damaging the secrecy and exclusivity of Pfizer's confidential, proprietary, and trade-secret information.

## PRAYER FOR RELIEF

WHEREFORE, Pfizer respectfully requests that this Court:

COMPLAINT

A.      Enjoin Ms. Li from further using, disclosing, or transmitting Pfizer's confidential information or trade secrets;

B.      Enjoin Ms. Li from destroying, manipulating, or otherwise altering any of Pfizer's confidential information and trade secrets in her possession, including any electronic information such as metadata that shows last access-date and creation date;

C.      Directs Ms. Li to provide Pfizer's outside counsel with attorneys-eyes-only access to (i) her personal Google Drive account(s), (ii) any and all computing devices in her possession, custody, and control, and (iii) to any other account or device on which she may have stored Pfizer's confidential information or trade secrets, as well as to return any hard copy documents containing Pfizer's confidential information or trade secrets;

D.      Award Pfizer reasonable attorneys' fees, costs, expert fees, expenses and all other sums expended by Pfizer in connection with the prosecution of this Action; and

E.      Order any such other and further relief as the Court may deem just and proper.

COMPLAINT

November 23, 2021                      Respectfully submitted,

                                        *s/ Ashok Ramani*
                                        Ashok Ramani (SBN 200020)
                                        DAVIS POLK & WARDWELL LLP
                                        1600 El Camino Real
                                        Menlo Park, California 94025
                                        Tel:   (650) 752-2000
                                        Fax:   (650) 752-2111
                                        ashok.ramani@davispolk.com

                                        Dana M. Seshens (NY SBN 4148128)
                                        (*pro hac vice application forthcoming*)
                                        DAVIS POLK & WARDWELL LLP
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Tel:   (212) 450-4000
                                        Fax:   (212) 701-5800
                                        dana.seshens@davispolk.com

                                        *Attorneys for Plaintiff Pfizer Inc.*