Ashok Ramani (SBN 200020)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Tel:   (650) 752-2000
Fax:   (650) 752-2111
ashok.ramani@davispolk.com

Dana M. Seshens  (NY SBN 4148128)
(*pro hac vice application forthcoming*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel:   (212) 450-4000
Fax:   (212) 701-5800
dana.seshens@davispolk.com

*Attorneys for Plaintiff Pfizer Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PFIZER INC.,<br><br>Plaintiff,<br><br>- against -<br><br>CHUN XIAO LI and DOES 1-5,<br><br>Defendants. | Civil Action No. 3:21-cv-1980-CAB-JLB<br><br>**DECLARATION OF BRIAN COLEMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

I, Brian Coleman, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of eighteen, and make this Declaration In Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction dated November 23, 2021, based on personal knowledge and experience. If called as a witness, I could and would testify to such facts under oath.

2. I am currently the Director of the Digital Forensics & Insider Threat Unit at Pfizer Inc. ("Pfizer"). I have worked in the Digital Forensics & Insider Threat Unit since I began working at Pfizer in March 2013, first as a Senior Forensic Analyst, then promoted to Senior Manager, and then promoted to Director. As the Director of the Digital Forensics & Insider Threat Unit, I am responsible for investigating the digital activity of employees who are identified as potentially engaging in suspicious activity or who otherwise warrant a data review. I am also responsible for collaborating with third-party forensics firms that Pfizer may engage to conduct the analysis of computers and hard drives.

3. Prior to my time at Pfizer, I had 7 years of experience working with digital forensic investigations with the Computer Forensics Unit of the Pennsylvania Attorney General's Office, the Department of Defense Cyber Crime Center, and the Computer Analysis Response Team at the Federal Bureau of Investigation. I have also testified as a subject-matter expert in computer forensics in federal, state, and military courts. In my past decade of experience, I have undertaken hundreds of forensic examinations.

4. My training in the forensic field includes a Bachelor of Science in Computer Science from Sacred Heart University. I have had hundreds of hours of relevant training since 2004. I am currently a certified OpenText EnCase Certified Examiner (EnCE) and a GIAC Certified Forensic Examiner; I was also previously certified on computer forensics through the Federal Bureau of Investigation and the Department of Defense.

### Security Measures for Highly Confidential Information

5. Pfizer employs a set of robust measures to protect its intellectual property. Those measures include employing a dedicated team of in-house forensics specialists (like me), monitoring employee activity on company devices, and using automated monitoring alerts to escalate suspicious employee activity.

6. There are also a variety of employee-facing data-security measures including policies, agreements, and blocks on certain activity. For example, Pfizer's corporate policy, entitled Global Acceptable Use of Information Systems Policy #403, prohibits "unauthorized . . . disclosure, transfer, use or unapproved release of Pfizer Information," the use of "unauthorized devices (e.g. personal/home computers and laptops, public computers, etc.) . . . to transmit, store or work on Pfizer Information," and the "[u]nauthorized use of non-Pfizer cloud service accounts for the storage, computation or transfer of Pfizer information." In furtherance of this prohibition, in 2019 Pfizer implemented an enterprise-wide block on connecting USB storage devices, such as external hard drives, to Pfizer laptops. Moreover, in October 2021, Pfizer implemented a technology that monitors when employees upload files to cloud-based platforms such as Google Drive.

### Investigation into Ms. Li's Activity

7. On Friday, October 29, I was reviewing data from our systems and saw a large volume of recent activity related to Google Drive. As I looked further into that activity, I realized that there were several thousands of entries of activity relating to a specific user: Ms. Chun Xiao Li. Due to the volume of documents that Ms. Li transferred, Pfizer immediately initiated a digital review of Ms. Li's emails, her file access, and her internet activity on her Pfizer-issued laptop. I performed or supervised all parts of this review by the Digital Forensics & Insider Threat Unit.

8. An investigation into Ms. Li's Pfizer email account revealed that she had been interviewing with and had received an offer of employment from Xencor. Upon further review by the Digital Forensics & Insider Threat Unit, we discovered that from Saturday, October 23 through Tuesday, October 26, Ms. Li transferred over 12,000 files from her Pfizer laptop to an online Google Drive account. This Google Drive account appeared to be Ms. Li's personal account. I understand that Ms. Li was actually "out of office" on October 25-26, but during that time, she was conducting mass transfers of files from her Pfizer laptop to her Google Drive account. Ms. Li engaged in these transfers after having received her offer of employment from Xencor.

9. Some of these files appeared to be personal in nature based on file names and folder structure, and thus were not suspected of containing confidential information from Pfizer, but several documents appeared, from their file names and folder structure, more than likely to contain Pfizer confidential information.

10. I and my colleague Tyler Hunter spoke with Ms. Li via video conference on the evening of October 29, 2021. The goal of this call was to remediate Pfizer's confidential information out of Google Drive. I explained to Ms. Li that Pfizer's systems had detected uploads to her Google Drive and that we needed to go through and delete the files from the Google Drive account. However, Ms. Li had already deleted everything in her Google Drive account before our call. Ms. Li shared her screen and logged into her Google Drive account, after which I confirmed that everything was deleted, including checking the Trash folder. I also confirmed that the Google account that was logged in was the same account that we had seen in our systems.

11. During this conversation, I asked Ms. Li to come to Pfizer's La Jolla office on Monday, November 1, and turn over her personal laptop and external hard drive for inspection. Ms. Li expressed reluctance to provide her personal

laptop, explaining that it contained personal information. After our call, I requested that Ms. Li's access to Pfizer's network be cut off as soon as possible.

12. As part of the subsequent analysis of Ms. Li's Pfizer-issued laptop computer, I determined that she attempted to connect the external hard drive to her laptop on October 24. Because Pfizer disables the ability to connect external hard drives to laptops, Ms. Li was unsuccessful in doing so.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 22, 2021
York, Pennsylvania

*Brian Coleman*
Brian Coleman