| | |
|---|---|
| 1 | Ashok Ramani (SBN 200020) |
| 2 | DAVIS POLK & WARDWELL LLP |
|   | 1600 El Camino Real |
| 3 | Menlo Park, California 94025 |
| 4 | Tel:   (650) 752-2000 |
|   | Fax:  (650) 752-2111 |
| 5 | ashok.ramani@davispolk.com |
| 6 | |
|   | Dana M. Seshens (NY SBN 4148128) |
| 7 | (*pro hac vice application forthcoming*) |
| 8 | DAVIS POLK & WARDWELL LLP |
|   | 450 Lexington Avenue |
| 9 | New York, New York 10017 |
| 10 | Tel:   (212) 450-4000 |
|    | Fax:  (212) 701-5800 |
| 11 | dana.seshens@davispolk.com |
| 12 | |
|    | *Attorneys for Plaintiff Pfizer Inc.* |

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PFIZER INC., | Civil Action No. 3:21-cv-1980-CAB-JLB |
| Plaintiff, | **DECLARATION OF THOMAS SMITH IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| - against - | |
| CHUN XIAO LI and DOES 1-5, | |
| Defendants. | |

I, Thomas Smith, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of eighteen and make this Declaration In Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction dated November 23, 2021, based on personal knowledge and experience. If called as a witness, I could and would testify to such facts under oath.

2. I am currently a Senior Manager of Employee Relations at Pfizer Inc. ("Pfizer"). I have worked in this role since December 2019. I began working at Pfizer in 1999 as a Supervisor of Investigations. In my current role, I am responsible for working with the Legal team to investigate Pfizer policy violations as well as violations of federal or state statutes by Pfizer employees, including the defendant Chun Xiao Li.

3. My training in the human relations field includes a Bachelor of Science in Law Enforcement Science as well as a Master of Science in Labor Relations from the University of New Haven as well as a Master of Arts in Leadership from Albertus Magnus College. In my role as Senior Manager of Employee Relations, I have conducted more than one hundred investigations into policy violations by Pfizer personnel.

<u>*Ms. Li's Employment History*</u>

4. On August 2, 2006, Pfizer hired Ms. Li as Associate Director of Statistics in Pfizer's Global Product Development group based in China. On or around August 22, 2016, Ms. Li transferred to Pfizer's facility in La Jolla, California and continued her role as Associate Director of Statistics.

5. As part of her employment with Pfizer, Ms. Li entered into a Confidentiality, Non-Solicitation, and Assignment of Inventions Agreement ("Confidentiality Agreement"), which imposed a number of restrictions on Ms. Li's activities during and after her employment. The Confidentiality Agreement, entered into by and between Pfizer and Ms. Li on August 22, 2016, expressly: (a) precludes Ms. Li from "disclos[ing] or us[ing] any" Confidential Information

1

Decl. of T. Smith iso TRO & Prelim. Inj.

without Pfizer's written permission, other than in the course of her employment with Pfizer (Agreement ¶ 1); and (b) requires that Ms. Li, "prior to accepting any new employment," inform the new employer "of the existence of this Agreement and provide a copy to such new employer to ensure that the new employer is aware of [her] post-employment obligations" (Agreement ¶ 9). All Pfizer employees are required to execute a version of the Confidentiality Agreement.

6. Pfizer also conducts periodic trainings designed to ensure that employees are aware of the policies and expectations around data security. These trainings include an overview of the "Blue Book," Pfizer's code of conduct, and additional training on the company's acceptable use and handling sensitive information policies on how to protect and appropriately share Pfizer information. Based on my review of pertinent records, Ms. Li attended each of these trainings during her time at Pfizer.

7. In particular, Ms. Li completed the "Collaborate Securely: Safeguarding Sensitive Pfizer Information" training three times in the last five years: on April 17, 2020; on May 8, 2018; and on January 20, 2017. Part of the "Collaborate Securely" training is a review of Pfizer's acceptable use policy. For example, Pfizer's Systems Policy #403 prohibits "unauthorized . . . disclosure, transfer, use or unapproved release of Pfizer Information," the use of "unauthorized devices (e.g. personal/home computers and laptops, public computers, etc.) . . . to transmit, store or work on Pfizer Information," and the "[u]nauthorized use of non-Pfizer cloud service accounts for the storage, computation or transfer of Pfizer information."

8. Ms. Li also completed required trainings on the "Blue Book," the Pfizer employee code of conduct, on February 16, 2021, February 13, 2019, April 18, 2017, and November 23, 2016. This training included reminders about Pfizer's corporate policies regarding safeguarding sensitive information.

## *Investigation into Ms. Li's Activity*

9. On October 29, 2021, I was informed that between October 23, 2021 and October 27, 2021, Ms. Li uploaded a large number of files from her Pfizer laptop to a personal Google Drive account. On Friday, October 29, my colleague Brian Donnelly and I had a telephone call with Ms. Li to discuss the significant volume of her Google Drive uploads. This call lasted for approximately 20 minutes. Upon being confronted with her Google Drive uploads, Ms. Li admitted that she was not careful in moving specific documents over, but instead uploaded entire folders on her computer's desktop to Google Drive. She further explained that she wanted to rearrange and organize her Pfizer documents and that she uploaded these documents for her own personal reference. Ms. Li also stated that she "should have had the legal sense to know what was right or wrong." I explained that the normal process would be to do a supervised deletion of the documents, and I advised that she should be getting a call from personnel in Pfizer's Digital Forensics & Insider Threat Unit to conduct that process.

10. On Monday, November 1, my colleagues Charles Graybow, Tyler Hunter, and I conducted a video conference with Ms. Li to discuss her Google Drive uploads. This interview lasted for approximately one hour. Among other things, Ms. Li explained that she "probably" has plans to go to another company and that she had been seeking a promotion for several years. However, she did not want to discuss whether she had an offer from another company. As part of this interview, Ms. Li returned her Pfizer laptop, and provided her personal laptop and external hard drive for imaging. Pending completion of Pfizer's forensic analyses of these devices, I placed Ms. Li on paid administrative leave.

11. Ms. Li notified Pfizer on November 12, 2021, that she was leaving Pfizer and that her last day at the company would be November 24, 2021. She refused to disclose the reason for her departure, including if she had a new employer.

4. On Thursday, November 18, 2021, Pfizer asked Ms. Li to come in for a meeting on Monday, November 22, to answer some follow-up questions in order to better understand the pathways that she used to transfer the files at issue. Pfizer expressed that it would appreciate Ms. Li's cooperation in making sure Pfizer's confidential information does not fall into the hands of any of its competitors, including her potential new employer Xencor, Inc. Ms. Li declined to meet with Pfizer, stating that she had already provided Pfizer all the information it requested and also citing health issues.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 22, 2021
Essex, Connecticut

Thomas Smith